RECORD NO. 09-4473

In The

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

## v.

## ALMA MORALES-VEGA,

*Defendant – Appellant*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT GREENBELT

――――――――――

## BRIEF OF APPELLANT

――――――――――

**Nardine M. Guirguis**
**GUIRGUIS LAW, PA**
**434 Fayetteville Street**
**Raleigh, North Carolina  27601**
**(919) 832-0500**

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .......................................................................... iv

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .................. 1

STATEMENT OF THE CASE .................................................................... 1

STATEMENT OF FACTS ....................................................................... 2

SUMMARY OF THE ARGUMENTS ...................................................... 13

ARGUMENTS ........................................................................................ 14

I.    THE DISTRICT COURT ERRED WHEN IT DID NOT DECLARE A MISTRIAL AFTER THE COURT RECEIVED NEWLY DISCOVERED EXCULPATORY EVIDENCE FROM A PREVIOUSLY UNAVAILABLE WITNESS DURING JURY DELIBERATIONS ................... 14

    A.    Standard of Review ...................................................... 14

    B.    Argument ..................................................................... 15

        1.    Appellant's due process rights were violated when the District Court did not consider new evidence in the form of an exculpatory letter from Herrera ............................................... 15

        2.    The District Court Erred in Not Vacating the Judgment Under Federal Rule of Criminal Procedure 33(a) ................................................. 18

II.    THE DISTRICT COURT ERRED IN ADMITTING STATEMENTS MADE BY ALLEGED CO-CONSPIRATORS ................................................................. 20

i

A.    Standard of Review......................................................... 20

B.    Argument ..................................................................... 20

    1.    The statements surrounding the conspiracy to possess with intent to distribute (20) twenty kilograms of cocaine from South Carolina were inadmissible hearsay statements because the Appellant was not in any way connected to this conspiracy ................. 21

    2.    The statements surrounding the trip to North Carolina and the conversations related to the CI's attempt to arrange a purchase from the Appellant were inadmissible hearsay because a conspiracy with the Appellant was not established ...................................................... 22

    3.    The record is devoid of any independent proof that Appellant had any role in any conspiracy to distribute cocaine with Zamora and Herrera in Maryland ....................... 23

    4.    The District Court's error was not harmless and should be reversed ....................................... 25

III.    THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO PROVE THAT THE APPELLANT COMMITTED THE CONSPIRACY ALLEGED IN COUNT ONE OF THE SUPERSEDING INDICTMENT...... 26

A.    Standard of Review......................................................... 26

B.    Argument ..................................................................... 27

CONCLUSION ............................................................................... 30

STATEMENT REGARDING ORAL ARGUMENT ................................. 30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*California v. Trombetta,*
    467 U.S. 479 (1984) ............................................................ 15

*Crane v. Kentucky,*
    476 U.S. 683 (1986) ............................................................ 15

*Randall v. Prince George's County, Md.,*
    302 F.3d 188 (4th Cir. 2002) .............................................. 15

*United States v. Blevins,*
    960 F.2d 1252 (4th Cir. 1992) ...................................... 20, 23

*United States v. Bradshaw,*
    281 F.3d 278 (1st Cir. 2002) .............................................. 17

*United States v. Canova,*
    412 F.3d 331 (2d Cir. 2005) ............................................... 17

*United States v. Diaz,*
    922 F.2d 998 (2d Cir. 1990) ............................................... 19

*United States v. Dorlouis,*
    107 F.3d 248 (4th Cir. 1997) .............................................. 14

*United States v. Ferguson,*
    246 F.3d 129 (2d Cir. 2001) ......................................... 19, 20

*United States v. Gambino,*
    59 F.3d 353 (2d Cir. 1995) ................................................ 19

*United States v. Giunta,*
    925 F.2d 758 (4th Cir. 1991) .................................. 22, 28, 29

*United States v. Heater*,
　　63 F.3d 311 (4th Cir. 1995).......................................................... 25, 26

*United States v. Higgs*,
　　353 F.3d 281 (4th Cir. 2003)............................................................. 26

*United States v. Hines*,
　　717 F.2d 1481 (4th Cir. 1983)........................................................... 21

*United States v. Hoffman*,
　　832 F.2d 1299 (1st Cir. 1987) ........................................................... 15

*United States v. Jones*,
　　101 F.3d 1263 (8th Cir. 1996).......................................................... 15

*United States v. Lomax*,
　　293 F.3d 701 (4th Cir. 2002)............................................................. 26

*United States v. Middlemiss*,
　　217 F.3d 112 (2d Cir. 2000) ............................................................. 17

*United States v. Sanchez*,
　　969 F.2d 1409 (2d Cir. 1992) ........................................................... 19

*United States v. Spencer*,
　　4 F.3d 115 (2d Cir. 1993) .................................................................. 18

*United States v. Stroupe*,
　　538 F.2d 1063 (4th Cir. 1976)............................................... 23, 24, 25

*United States v. Tyler*,
　　758 F.2d 66 (2d Cir. 1985) ................................................................ 22

## CONSTITUTIONAL PROVISION

U.S. CONST. amend. V ................................................................ 16

## **STATUTES**

18 U.S.C. § 3231 ......................................................................... 1

21 U.S.C. § 2 ............................................................................ 2, 3

21 U.S.C. § 841 ..................................................................... 1, 3, 27

21 U.S.C. § 841(a)(1) ................................................................ 2, 3

21 U.S.C. § 846 ..................................................................... 1, 3, 27

28 U.S.C. § 1291 ....................................................................... 1

## **RULES**

Fed. R. Crim. P. 29 ..................................................................... 12

Fed. R. Crim. P. 33 .................................................................. 19, 20

Fed. R. Crim. P. 33(a) ................................................................. 18

Fed. R. Evid. 801(c) .................................................................... 24

Fed. R. Evid. 801(d)(2)(E) ..................................................... 17, 20, 24

Fed. R. Evid. 804 ...................................................................... 16

## STATEMENT OF JURISDICTION

The United States District Court for the District of Maryland had jurisdiction over this matter pursuant to Title 18 U.S.C. Sec. 3231. This Court has jurisdiction to hear this matter pursuant to Title 28 U.S.C. Sec. 1291 as there has been a final adjudication on the merits by a United States District Court.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. WHETHER THE DISTRICT COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR A MISTRIAL AFTER THE COURT RECEIVED NEWLY DISCOVERED EXCULPATORY EVIDENCE FROM A PREVIOUSLY UNAVAILABLE WITNESS DURING JURY DELIBERATIONS.

2. WHETHER THE DISTRICT COURT ERRED WHEN IT ADMITTED STATEMENTS MADE BY ALLEGED CO-CONSPIRATORS.

3. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO CONVICT THE APPELLANT OF THE CHARGED CONSPIRACY.

## STATEMENT OF THE CASE

Appellant, Alma Morales-Vega, was indicted on January 30, 2008. (J.A. 2). She was then charged pursuant to a Superseding Indictment on February 27, 2008. (J.A. 9-11). Count one of the Superseding Indictment charged that the Appellant violated 21 U.S.C. Sections 841 and 846. (J.A. 9-10). Count two of the Superseding Indictment charged that the Appellant

violated 21 U.S.C. Section 841(a)(1) and 18 U.S.C. Section 2.  (J.A. 11).  On December 3, 2008 attorney Vaughn Miles Mungin entered his appearance on behalf of the Appellant.  (J.A. 4).  A jury was empaneled and the Appellant proceeded to trial on January 13, 2009.  (J.A. 4).  On January 26, 2009 the Appellant was found guilty of Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine and could not reach a verdict as to Count Two of the superseding indictment, Possession with Intent to Distribute 500 Grams or More of Cocaine, Aiding and Abetting, which resulted in a mistrial as to Count Two.  (J.A. 655, 658).  The Government then moved to dismiss Count Two of the Superseding Indictment on May 22, 2009.  On May 22, 2009, Vega was sentenced to the custody of the Bureau of Prisons for a period of Two Hundred and Ten (210) months.  (J.A. 668).  Appellant timely filed and served her Notice of Appeal. (J.A. 673).

## **STATEMENT OF FACTS**

Appellant was named in a Two Count Superseding Indictment in the United States District Court of Maryland.  (J.A. 9 -11).  Count One charged Appellant with Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine with Juan Herrera, Felipe Dejesus Lucero, Isaac Rojas, Humberto Salazar Torres, and Jesus Herrera-

2

Zamora and others both known and unknown to the grand jury from at least August 2007 continuing through at least January 26, 2008 in violation of Title 21 U.S.C. §§ 841 and 846; and Count Two of the Superseding Indictment that on or about January 26, 2008 that the Appellant and Juan Herrera, Felipe Dejesus Lucero, and Isaac Rojas did Knowingly and Intentionally Possess with Intent to Distribute 500 Grams or More of Cocaine, Aiding and Abetting in violation of Title 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (J.A. 9 – 11).

At trial the majority of the evidence that the government used to convict the Appellant of a drug conspiracy was based on a voluminous amount of alleged co-conspirator statements, which were read into evidence by agents from transcripts that were previously translated into English from recordings that were in Spanish. (J.A. 23). These transcripts were recordings made from August 2007 until approximately February 2008 of conversations and messages of various individuals, (which were referenced throughout the Appellant's trial as government's exhibit T and then the corresponding number). (J.A. 15).

The evidence showed that an investigation started with the government's confidential informant (Remigio Olivier) AKA "Alex" (herein after referred to as "CI"), contacting Jesus Herrera-Zamora (Zamora) in

August 2007 to purchase cocaine. (J.A. 23 – 24). During August and September 2007 the CI attempted to purchase about 20 (twenty) kilograms of cocaine from a source that Humberto Salazar Torres (Torres) had in South Carolina, Jose Ruiz (Ruiz), and Ruiz's ultimate source an unidentified male "UM2" from around Charleston, South Carolina. (J.A. 24, 30, 34, 40 – 41). The individuals involved in this conspiracy are Torres, Zamora, Ruiz, and UM2. (J.A. 25 – 43). A series of statements made by these individuals and the CI during the course of their attempted transaction were admitted into evidence. (Id.). This drug transaction never came to fruition after law enforcement seized about $400,000 from their CI on September 6, 2007 while he was in route to South Carolina with Zamora and Torres. (J.A. 34, 41 – 42). There is no evidence, direct or circumstantial, that connects the Appellant to this South Carolina conspiracy. (J.A. 343)

On December 4, 2007, Herrera was mentioned for the first time. The evidence shows that Zamora was contacting Herrera to try to meet up with him; however, they never met as planned. (J.A. 62 – 64, 52 – 57, 59-60). Then Zamora and the CI discuss details that Zamora alleges he obtained from Herrera, although it is apparent from the recordings that the information they discuss was not previously discussed with Herrera. (J.A. 68 – 73, 76 – 78, 81).

Appellant's trial attorney objects to all the alleged co-conspirator statements coming into evidence. (J.A. 84 – 85). The Court overruled his objection and stated it assumes that the government will tie Ms. Morales-Vega (the Appellant) to the conspiracy. (J.A. 85).

Another set of alleged co-conspirator statements are subsequently admitted into evidence. These statements are between an individual by the name of Leonel ("LH") and Zamora, Herrera and Zamora, and the CI and Zamora on December 10 and 11 of 2007. (J.A. 90 – 93 and 95 – 98 and 102 – 104 and 106 – 109). During these conversations Zamora is trying to make arrangements to meet up with Herrera to talk. (J.A. 90-93 and 106 – 109). Zamora then discusses details with the CI that he clearly had not discussed with Herrera. (J.A. 95 – 98). Zamora and the CI attempt to set up a meeting with Herrera; however, again Herrera never shows up, nor answers his phone when Zamora tries to reach him. (J.A. 110 – 111, 142).

Then on December 12, 2007 Herrera meets with the CI for the first time along with Zamora at a restaurant in Maryland. (J.A. 158). A series of recorded statements between Herrera, the CI, and also an unidentified voice/speaker "UV" was admitted into evidence (J.A. 158 – 159). They decide that they are going to take a trip to North Carolina and talk there tomorrow, December 13, 2007. (J.A. 159).

On December 13, 2007 Herrera, Zamora and the CI drive together to North Carolina. (J.A. 188). About ten (10) hours of alleged co-conspirator statements encompassing, for the most part, statements between Herrera and the CI during the drive to North Carolina are admitted into evidence. (J.A. 188 – 237). These statements consist of many topics of conversation (J.A. 197 – 215). They also discuss a "lady" and her alleged involvement in the drug business (J.A. 210 – 214; 221; 223 – 224; 237). The lady was later identified by law enforcement as Ms. Morales-Vega, the Appellant. (J.A. 225).

He states that "the lady has mansions in Acapulco." (JA 221) However, the evidence shows that the Appellant did not own any real estate property. (J.A. 361).

Then the Appellant's first of two recordings is entered into evidence. (J.A. 238). The CI inquiries about business for the majority of time while speaking with the Appellant. (J.A. 238 – 246). There was never any agreement to do business between the Appellant and the CI. (J.A. 238 – 253). Finally, they come to an impasse and the CI just wants her to take him to a hotel. (J.A. 268).

The evidence further shows that on December 13, 2007 that the Appellant never met or spoke with Zamora. (J.A. 451) He was outside of

the trailer according to the testimony presented by Remigio Olivier (Alex), the CI, and he never went inside. (Id.). There is no evidence to indicate that Zamora had even spoken with the Appellant or even met her that day or before. (J.A. 451).

The following day on December 14, 2007 Zamora, Herrera, the CI, and the Appellant went to a strip mall in North Carolina. (J.A. 396). Remigio Olivier, "Alex" the CI, testified that on December 14, 2007 the conversations he had with the Appellant were not drug related and that she appeared to be happy and fine. (J.A. 460 – 461). The CI left Maryland and he never spoke to or saw the Appellant again. (JA 462) The evidence also shows that the CI did not even know Herrera's name. (J.A. 447). There was no further or previous evidence regarding the Appellant's involvement with Zamora or the CI (besides that which is discussed above).

Then another set of statements unrelated to Appellant are admitted into evidence. Herrera asks Zamora if he has money to purchase cocaine, but he says "No". (J.A. 289 – 290). Zamora and an individual by the name of "Gordo" (identified as "GL") converse and Gordo decides that he does not want cocaine. (J.A. 293 – 295). Then another conversation between Zamora and Herrera is entered into evidence wherein Herrera does not know when or even whether he will meet with Zamora. (J.A. 301).

7

Zamora continuously is on his phone and all the recorded conversations in Spanish are translated and are then read into evidence. These conversations do not reference the Appellant in any way.   On December 18, 2009, Zamora converses with Gordo about an individual in Virginia (J.A. 304).  The following day on December 19, 2007, Zamora and Frank Resendez have a conversation that was recorded, translated, and read into evidence as well, about a possible purchase of one kilogram of cocaine. (J.A. 309 – 310).

Then another set of conversations between Herrera and Zamora are entered into evidence where they are discussing trying to meet up with each other.  (J.A. 310 – 314).  The evidence reflects that the surveillance only shows that Zamora and Herrera met, but there was no further evidence of what transpired when they met. (J.A. 315).  Also, there is no further or previous evidence regarding Frank Resendez or Gordo, besides the conversations they had with Zamora.  (J.A. 309 – 310).

Later that same day on December 19, 2007 the CI contacts Zamora. (J.A. 315). The CI asks again about Herrera but there was no intelligible answer. (J.A. 316).  Zamora ends the conversation and states that "he will call him back," although he does not.  (J.A. 315 – 317).

Since Zamora had not heard anything from Herrera, on December 26, 2007, he calls Herrera and leaves him another voicemail, where he pleads for him to please call him back. (J.A. 319). However, it was not until January 10, 2009 that they speak again. (J.A. 319). In this conversation Zamora asks Herrera "What's up? You don't think of me?" They do not discuss anything substantively and Herrera closes up the inconclusive conversation after a few moments. (J.A. 319 – 320).

Then on the evening of January 13, 2008, Zamora and the CI have a conversation. (JA 320) Although the evidence reflects that Herrera never asked Zamora to have the CI call him, Zamora tells the CI that Herrera wants the CI to call him and gives him Herrera's phone number. (J.A. 321 – 322). During that same conversation Zamora states to the CI "Call that old man, the asshole, because I've been calling him. Almost every day I bug him." (J.A. 322). The CI then tries to reach Herrera but is unsuccessful and has to also leave him a message. (JA 324)

Herrera and Zamora converse over the phone on January 13, 2008. (J.A. 324). Zamora asks Herrera "whether they are going to work or what?" (Id.). Herrera clearly responds by saying, "**No.** I don't know right now." (J.A. 325). Zamora further states that "…that guy is really upset. He's even

disappointed, because he says going over there (North Carolina) didn't work or anything, not even the effort was made." (Id.)

Then the evidence shows later on January 13, 2007 Herrera and the CI speak with each other over the phone for the first time. (J.A. 325). Moreover, the evidence reflects that they had not spoken since their trip to North Carolina, a month ago. The CI tells Herrera that Zamora has told him that Zamora calls him but that he doesn't answer his calls. (J.A. 326). Herrera responds by saying that he does not want to deal with Zamora. (J.A. 328). The CI then states that Herrera has not been communicating with him either. (J.A. 328). He closes up the conversation by saying he will call him back in a few days. (J.A. 329).

Thereafter, the CI was unsuccessful in reaching Herrera. (J.A. 330) The evidence shows that this was the last conversation they had, despite the CI's several attempts/messages, which went unanswered. (J.A. 330 – 332).

Agent Betkey testified that government's exhibits T70 and T78 through T101 are calls between two speakers on January 25, 2008 into the early morning hours of January 26, 2008. (J.A. 333). These exhibits contain a series of statements between two speakers, whom she states are Herrera and Felipe Lucero (Lucero), trying to meet up with each other in North Carolina while getting extensively lost. (J.A. 333, 467 – 516). The evidence

shows that at 1:43 a.m. on January 26, 2008, through a wire intercept on Herrera's phone, the Appellant states in a call to Herrera that "she's getting lunch ready." (J.A. 516).

Agent Carter from the Department of Homeland Security stationed in Winston-Salem, North Carolina testified at trial that he along with other law enforcement officers were conducting surveillance the night of January 25, 2008. (J.A. 517). He testified that he was conducting surveillance on a sedan, a white Honda Accord, which came past him, and further states that this Accord went from Reidsville, from around 100 Capital Loop, "all the way back up to Baltimore, Maryland." (J.A. 528 – 529).

Corporal Cicale, a K-9 Officer, testified that he conducted a traffic stop on a white Honda Civic on January 26, 2008, which had three occupants in it. (J.A. 542 and 546). This traffic stop was conducted in Bladensburg, Maryland. He then searched the trunk of this vehicle where he located a cooler with food and two kilograms of cocaine. (J.A. 552). He does not testify as to whom any of the three individuals were in the Honda Civic, and he certainly does not testify that it was an Accord.

Although Agent Trawinski testifies that the occupants of a white Honda Civic were Felipe Lucero, Isaac Rojas and Juan Herrera, the record reflects that she is not testifying from personal knowledge. (J.A. 417). She

11

had to check what appears to be a document before answering the question of who the occupants were of a white Honda Civic; she clearly indicates that she was not involved in the traffic stop; and does not testify that she was involved in the search of a Honda Civic either. (J.A. 417 – 418). She does not testify that she was involved in their arrest, nor did she identify them on January 26, 2008. As to what she did on January 26, 2008, she solely testified to conducting surveillance on the Civic. (J.A. 416 – 418).

Detective Eveler of the Prince George's County Department testified that on Item D1, which came from Drugs A1, a kilo of cocaine was a hair. (J.A. 620 – 621). Mitochondrial DNA testing was conducted on that hair. (J.A. 625). According to DNA Analyst Murray's testimony, this hair came from the Appellant or someone from her maternal lineage. (J.A. 629).

Appellant's trial attorney then moved for a motion to dismiss pursuant to Federal Rules of Criminal Procedure 29 after the close of the government's evidence, and the defense did not present any evidence. (J.A. 674A, 674B). The Appellant's trial attorney initially presented a defense of coercion and duress, but was unsuccessful in advancing that theory because of a lack of evidence to support it. Then, during jury deliberations the Court received a letter from Herrera that showed how the Appellant was under duress during the relevant period. (J.A. 651 – 652 and 666). Given that this

new evidence was not accessible to the defense until then, the defense properly moved for a mistrial but the District Court denied such motion and proceeded to the verdict.  (J.A. 652 – 653).

## SUMMARY OF THE ARGUMENTS

The District Court erred when it did not declare a mistrial after the Court received newly discovered exculpatory evidence from a previously unavailable witness during jury deliberations.  The exculpatory evidence was a letter written by Appellant's alleged co-defendant, Juan Herrera which was received by the District Court.

The District Court erred when it admitted into evidence statements made by alleged co-conspirators, whom were part of a separate conspiracy, which was not related in any way to the Appellant.  The first conspiracy presented in the government's case and chief involved an attempted twenty (20) kilogram cocaine purchase in **South** Carolina around August and September 2007.  Given that the Appellant was not in any way related to this conspiracy, the statements made by the individuals in this conspiracy should not have come into evidence as co-conspirator statements against the Appellant.  Secondly, the evidence surrounding the possible North Carolina drug transaction with the Appellant and the CI showed that they never came to an agreement.  This evidence shows that it did not amount to more than an

attempt of the arrangement in purchasing cocaine, not a conspiracy. Also, any statements related to Zamora and/or Herrera while interacting in Maryland were inadmissible hearsay evidence because there was no independent evidence connecting Appellant to any conspiracy.

The evidence presented at trial was insufficient to prove that the appellant was guilty of the conspiracy as alleged in Count One of the Superseding Indictment. Even in the light most favorable to the government, the evidence did not prove that the Appellant was involved in a conspiracy to possess with the intent to distribute five kilograms or more of cocaine with the individuals named in Count One of the Superseding Indictment.

## ARGUMENTS

I.  **THE DISTRICT COURT ERRED WHEN IT DID NOT DECLARE A MISTRIAL AFTER THE COURT RECEIVED NEWLY DISCOVERED EXCULPATORY EVIDENCE FROM A PREVIOUSLY UNAVAILABLE WITNESS DURING JURY DELIBERATIONS.**

### A.    Standard of Review.

This Court reviews for abuse of discretion a district court's decision not to grant a motion for a mistrial. *United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997). When a district court makes a mistake of law, it abuses

14

its discretion.  *See Randall v. Prince George's County*, 302 F.3d 188, 211 (4th Cir. 2002).

### B.    Argument.

#### 1.    Appellant's due process rights were violated when the District Court did not consider new evidence in the form of an exculpatory letter from Herrera.  (J.A. 666).

The Constitution of the United States guarantees all criminal defendants "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984).  In this regard, the right to offer the testimony of witnesses and to compel their attendance, if necessary, is a fundamental element of due process of law.  *United States v. Hoffman*, 832 F.2d 1299, 1302 (1st Cir. 1987).  However, a criminal defendant's due process rights are violated when exculpatory evidence is introduced at trial for the first time at a time when it is too late for the defendant to make any beneficial use of this new evidence.  See *United States v. Jones*, 101 F.3d 1263 (8th Cir. 1996).

In the case sub judice, Appellant attempted to advance the defense of coercion and duress, but was unsuccessful in doing so.  After the case was submitted to the jury and during jury deliberations the Court received a letter from an alleged co-conspirator, Juan "Herrera."   According to Mr. Herrera,

15

he had a relationship with the Appellant, and he forced the Appellant to travel with him to places and meet certain people, including the CI. Although Appellant continuously refused Mr. Herrera's demands, Mr. Herrera states in the letter that he finally threatened Appellant that if she did not help him out he would stop all financial assistance to her. The trial court found the letter to not be evidence and denied Appellant's request for a mistrial.

However, under Federal Rules of Evidence 804, this letter should have been admitted into evidence because Juan Herrera was unavailable to testify at Appellant's trial and his letter contained a series of statements against his interest which was clearly signed by him and sent to the Court. As it is clearly indicated by the government Mr. Herrera may have invoked his Fifth Amendment right making him unavailable. (J.A. 652). It appears that Appellant tried to procure Herrera's attendance at her trial as a witness but was unable to do so after speaking with his attorney. (J.A. 652 – 653). Also, as the government indicates these statements made in Herrera's letter are statements against Mr. Herrera's interests. (J.A. 652). Thus, if a mistrial was granted, at the very least, further investigation could have been done into the letter, circumstances surrounding it, and the statements themselves.

When a court finds that there is a significant potential for prejudice to occur during trial, it should examine whether prophylactic measures will alleviate the prejudice (and if so, take them), or whether the threat can otherwise be dispelled or disproved. *United States v. Bradshaw*, 281 F.3d 278, 289 (1st Cir. 2002). The court may determine that no curative measures will suffice and grant a timely motion for a mistrial. *Id.*

Here, after the letter was discovered, Appellant was prevented from pursuing a complete defense due to the District Court's refusal to permit Appellant's counsel to investigate this new evidence. Also, if the defendant had more time to further investigate the "new evidence" it is very possible that the time would have led to more information which at the very least should have affected the court's analysis regarding whether the extensive statements made by the alleged co-conspirators should have been admitted under 801(d)(2)(E) or to what extent those statements should have been admitted.

It is respectfully submitted that Mr. Herrera's newly-discovered exculpatory statements satisfy the threshold requirement that such evidence be material, non-cumulative, and previously unavailable to the defendant. *See United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005); *United States v. Middlemiss*, 217 F.3d 112, 122 (2d Cir. 2000).

17

Mr. Herrera's exculpatory statements were material since they directly contradicted the most important aspect of the government's theory of liability: that Appellant was an active participant in the drug transaction. If, as Mr. Herrera's information establishes, Appellant was only involved in the drug transaction due to her duress, Appellant has a viable defense to the charges.

Furthermore, "[if] the new evidence was the only evidence impeaching [the government witnesses]'s credibility, [then] it was non-cumulative." *United States v. Spencer*, 4 F.3d 115, 119 (2d Cir. 1993). Mr. Herrera's exculpatory statements explicitly contradict the testimony offered by the CI. (JA 453 and 460 – 461). As such, Mr. Herrera's exculpatory statements would have presented to the jury persuasive evidence to impeach the governments' witnesses as to Appellant's participation in the drug transactions, clearly rendering the information both material and non-cumulative.

## 2. The District Court Erred in Not Vacating the Judgment Under Federal Rule of Criminal Procedure 33(a).

Rule 33(a) provides that a district court "may vacate judgment and grant a new trial if justice so requires[,]" and vests the trial court with "broad discretion . . . to set aside a jury verdict and order a new trial to avert a

perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). *See United States v. Diaz*, 922 F.2d 998, 1006 (2d Cir. 1990). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice," *United States v. Ferguson*, 246 F.3d 129, 135 (2d Cir. 2001), and "[a] district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation," *id., citing Sanchez*, 969 F.2d at 1414 (granting a new trial under Rule 33 when "[t]here [is] a real concern that an innocent person may have been convicted"). *Id.* In that context, district courts have discretion to evaluate the new evidence in light of the evidence produced at trial and to determine the probable impact of the new evidence on a jury, *see United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995), including conducting an evidentiary hearing.

Mr. Herrera, in a letter addressed to the Court and the Prosecutor, explained how the Appellant was not a willing participant in the conspiracy. (J.A. 666). Thus, here, the newly-discovered exculpatory evidence provided by Mr. Herrera not only categorically debunked the government's trial theory, it also incontrovertibly discredited the trial testimony of the government's informant and other witnesses. (Id.). Consequently, the District Court abused its discretion in failing to order a new trial pursuant to

Rule 33, or, in the alternative, for failing to conduct an evidentiary hearing on the issue, since permitting the guilty verdict against Appellant to stand in light of this newly-discovered exculpatory evidence is a manifest injustice. *See Ferguson*, 246 F.3d at 135.

## II. THE DISTRICT COURT ERRED IN ADMITTING STATEMENTS MADE BY ALLEGED CO-CONSPIRATORS.

### A. Standard of Review.

Any findings of fact with respect to questions of admissibility "are subject to a clearly erroneous standard of review, and a district court's decision to admit evidence under Rule 801(d)(2)(E) may only be overturned on appeal if it constituted an abuse of discretion." *U.S. v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992) (citations omitted).

### B. Argument.

The Fourth Circuit only allows in the statements of co-conspirators against a defendant if the government's evidence satisfies the court "(1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy." *Blevins*, 960 F.2d at 1255. A trial judge has the option of admitting the statements before the conspiracy is proved but must declare a mistrial or dismiss the case "if the government fails to prove aliunde that a conspiracy existed."

*U.S. v. Hines*, 717 F.2d 1481, 1488 (4th Cir. 1983). The government has the burden of proving the existence of a conspiracy by a preponderance of *independent* evidence.  In other words, there must be substantial evidence of the conspiracy *other than* the [co-conspirator's statement] itself." *Hines*, 717 F.2d at 1488.

>    1.    **The statements surrounding the conspiracy to possess with intent to distribute (20) twenty kilograms of cocaine from South Carolina were inadmissible hearsay statements because the Appellant was not in any way connected to this conspiracy.**

As stated in the statement of facts, the initial conspiracy to purchase up to (20) twenty kilograms of cocaine clearly did not involve the Appellant. Nothing in the record points to Appellant's involvement in this drug transaction or conspiracy (J.A. 343).  Government witness Agent Betkey testified that Appellant was not party to any conversations relating to this conspiracy and that the participants in this conspiracy were not going to see Appellant.  (J.A. 341, 353).  Neither Appellant's name nor Juan Herrera's is mentioned by any of the participants in this conspiracy. There is not even a scintilla of evidence that ties Appellant to this conspiracy, nor do any of the co-conspirators of this conspiracy point to Appellant's involvement in this conspiracy.  Thus, these statements are irrelevant and also should have been considered to be hearsay.

Furthermore, Appellant's voice is only recorded by the Government on two transcripts, T46 and T102. (J.A. 345). None of these recordings have anything to do with the conspiracy involving Zamora, Torres, Ruiz, the CI and the $400,000. These conversations are provided as evidence by the Government that Appellant was involved in another conspiracy, the exact nature of which is not made clear.

> **2.**  **The statements surrounding the trip to North Carolina and the conversations related to the CI's attempt to arrange a purchase from the Appellant were inadmissible hearsay because a conspiracy with the Appellant was not established.**

Standing alone when a willing buyer and seller of drugs come together, without any further agreement to do anything in concert with drugs, is insufficient to establish a conspiracy. *See generally*, *United States v. Giunta*, 925 F.2d 758, (4th Cir. 1991) and *United States v. Tyler*, 758 F.2d 66. (2d Cir. 1985). The evidence shows that the CI and the Appellant have not agreed to do business together and there is also a question of whether there is any business (J.A. 243 – 246, 253). Also, the statements by Appellant indicate her apprehension in doing anything with the CI. (J.A. 248). Finally, they come to an impasse and nothing is agreed to. (J.A. 268).

The next day, the CI and Appellant meet over lunch. They do not discuss anything drug related, but socially converse. (J.A. 460 – 461).

Incidentally, the statements made by the CI were not brought into evidence through the CI, but were read into evidence by government agents; these statements are hearsay on their own right. The CI left Maryland without reaching any agreement or seeing any product, and he never spoke or saw Appellant again. The statements surrounding this attempt to make an arrangement for the purchase of drugs should not have been allowed in as the government failed to establish that (1) a conspiracy involving Appellant and the alleged co-conspirators existed (2) and that the statements at issue were made during the course of the conspiracy, as required under *U.S.* v. *Blevins*, 960 F.2d at 1255.

> **3.    The record is devoid of any independent proof that Appellant had any role in any conspiracy to distribute cocaine with Zamora and Herrera in Maryland.**

In *United States v. Stroupe*, 538 F.2d 1063 (4th Cir. 1976), Defendant Stroupe was convicted of conspiracy to furnish amphetamine for distribution. In this case, undercover agents made contact with a suspected dealer and co-defendant named Wright to purchase some amphetamine. *Id.* at 1064. Wright, in the presence of the undercover agents, made a phone call to a contact named "Wayne" and later Wright and the undercover agents went to a leased trailer. Wright entered the trailer and came out of the trailer along with Stroupe and his girlfriend. *Id.* Wright, upon getting into the car

23

with the undercover agents produced a bag of what was later confirmed to be amphetamine. *Id*. Two weeks later, Wright and the undercover agents went to North Carolina to purchase additional amphetamine from another co-defendant, and on the way home, one of the agents asked Wright whether the amphetamine just purchased was as good as that which they had previously bought. Wright responded by asking "You mean the stuff we got from Wayne Stroupe?" This was the only occasion on which Wright disclosed Stroupe's name. *Id.* at 1065.

The District Court allowed Wright's out of court statement in evidence to prove the truth of Wright's assertion that he purchased amphetamine from Stroupe under the co-conspirator hearsay exception found under FRE 801(c) and (d)(2)(E). *Id*. The Court of Appeals disagreed with the District Court and stated that a conspiracy between Wright and Stroupe cannot be established by Wright's out-of-court statements made to the agents alone; there must be proof from another source of the existence of the conspiracy and of Stroupe's connection with it before Wright's statements to the agents can become admissible against Stroupe. *Id*. Ultimately the Court found that there was no independent evidence relating to Stroupe's participation in the conspiracy, and only Wright's out of court statements would support such a claim. The Court of Appeals held that the

statements made by Wright regarding Stroupe were inadmissible hearsay. *Id.* at 1066.

Similar to the facts in *Stroupe*, the Government here fails to provide any evidence outside of the co-conspirator statements (primarily government's exhibit T46, where Herrera discusses at length the lady), that Appellant was in any way involved with a conspiracy involving Herrera and/or Zamora in Maryland. There were a series of statements admitted into evidence where the alleged co-conspirators were Herrera, Zamora, and individuals who spoke with Zamora, such as Gordo, and the statements of the CI; however, there was no independent evidence regarding the Appellant's involvement in the drug business with Herrera and/or Zamora. As in *United States v. Stroupe*, the statements which came in at the Appellant's trial under the guise of co-conspirator statements should not have been admitted into evidence given that they are inadmissible hearsay.

### 4.    The District Court's error was not harmless and should be reversed.

A trial court's rulings on evidentiary matters are not to be disturbed unless the error prejudiced the Defendant by leading to a result different from one that may have been reached had the error not occurred. *U.S. v. Heater*, 63 F.3d 311, 325 (4th Cir. 1995). In other words, the Court must be able to say "with fair assurance, after pondering all that happened without

stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Id.* (citations omitted). In the case sub judice, it is abundantly clear that had the District Court not allowed the irrelevant and hearsay statements in, Appellant would not have been convicted as these statements were the majority of proof proffered by the Government to connect Appellant to the conspiracies. Thus, the District **Court's error was not harmless and should be reversed.**

## III. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO PROVE THAT THE APPELLANT COMMITTED THE CONSPIRACY ALLEGED IN COUNT ONE OF THE SUPERSEDING INDICTMENT.

### A.    Standard of Review.

"In reviewing sufficiency of the evidence following the conviction, this Court views "the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government." And we must sustain the fact finder's verdict if "any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt." Furthermore, "determinations of credibility are within the sole province of the (fact finder) and are not susceptible to judicial review." *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002) (citations omitted); *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003).

**B.     Argument.**

The Appellant was charged in Count One of the Superseding Indictment in conspiring with Juan Herrera, Felipe DeJesus Lucero, Isaac Rojas, Humberto Salazar Torres, and Jesus Herrera-Zamora to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841 and 846.  (J.A. 9-10).  Twenty-one (21) U.S.C. § 841 makes it unlawful for an individual to knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance.  Twenty-one (21) U.S.C. § 846 makes it unlawful for an individual to conspire to commit the crime described in 18 U.S.C. § 841.

The government did not meet its burden in proving that the Appellant was in fact involved in the conspiracy with Humberto Salazar Torres, Felipe Dejesus Lucero, and/or Isaac Rojas.  Humberto Salazar Torres was involved in the first conspiracy involving (20) twenty kilograms of cocaine from **South** Carolina, which the Appellant had no part in, directly or indirectly. The evidence shows that Felipe Dejesus Lucero and Isaac Rojas were never identified as being involved in a conspiracy.  There were three individuals in a Honda Civic that K-9 Officer Cicale discussed in her testimony, but they were not identified.  (J.A. 713).  This vehicle stop on a Honda Civic was

27

effectuated by Officer Cicale in Bladensburg, Maryland; however, the vehicle that was identified leaving 100 Capital Loop in Reidsville, North Carolina, the residence associated with the Appellant, was a Honda Accord. Moreover, although the government spent a great amount of time reading statements made by individuals alleged to be co-conspirators, it never identified that the individuals whom were alleged to be the speakers by the government were in fact the speakers; thus, failing to identify the alleged co-conspirators.   The evidence at trial did not prove that the Appellant was guilty of Count One of the Superseding Indictment.

In *United States v. Giunta*, 925 F.2d 758 (4th Cir. 1991), this Court held that sufficient evidence to support a conspiracy conviction requires more than a conspiracy to attempt to arrange a purchase.  *Id.* at 767.  In *Giunta*, this Court stated that:

> It is important to note that proof that an alleged conspirator (here Giunta) has assisted a willing (ostensible) buyer (here Mazzeo or Calles) in finding an ostensibly willing seller of drugs (here Fedino),would not, standing alone, establish any agreement between the facilitator and the seller to do anything in concert with the drugs, including their importation and distribution.  *See United States v. Tyler*, 758 F.2d 66, 69 (2d Cir. 1985) (such evidence held insufficient to "establish the existence of an agreement between the facilitator and the seller").  *Id.*

In the case sub judice, like in *Giunta*, the evidence at trial included a series of inconclusive and confusing conversations between individuals who

were alleged to be co-conspirators of the Appellant. Prior to January 25, 2008, the statements that were admitted into evidence under the guise of co-conspirator statements amounted to individuals attempting to arrange a purchase of cocaine for the CI. The evidence regarding these conversations at most amounted to an attempt to arrange a purchase for the CI, with Zamora, Herrera, and the Appellant. The evidence here reflects that "going over there (North Carolina) didn't work or anything, not even the effort was made." (J.A. 325). These conversations, like in Giunta, "led to nothing in the end." *Giunta* at 765.

Then on January 25, 2008, there was a separate group of individuals, separate and apart from Zamora and the CI, involved in a (2) two kilo transaction. Thus, the most the government proved is that the Appellant was involved in a conspiracy with "others," not identified by the evidence, to distribute and possess with intent to distribute two kilograms of cocaine. The witnesses produced at trial did not, in the light most favorable to the government, prove beyond a reasonable doubt that the Appellant actually conspired with the alleged co-defendants in Count One of the Superseding Indictment. Also, the evidence presented at trial did not, in the light most favorable to the government, prove beyond a reasonable doubt that the

Appellant conspired to possess with the intent to distribute five kilograms or more of cocaine.

## CONCLUSION

Alma Morales-Vega, the Appellant herein, respectfully requests this Court vacate her conviction based on the aforementioned arguments and remand this case for a dismissal, or in the alternative a new trial.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Alma Morales-Vega respectfully requests oral argument in this matter because she believes that it would assist the Court in analyzing the issues raised in this appeal and the impact on the criminal justice system.

Respectfully submitted this 29th day of December 2009.

/s/ Nardine M. Guirguis
Nardine M. Guirguis
GUIRGUIS LAW, PA
434 Fayetteville Street
Raleigh, North Carolina  27601
(919) 832-0500

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains *6,485* words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using *Microsoft Word 2000* in *14pt Times New Roman*; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>December 29, 2009    </u>      <u>/s/ Nardine M. Guirguis    </u>
                                                                 *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 29th day of December, 2009, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Deborah A. Johnston
OFFICE OF THE U.S. ATTORNEY
6500 Cherrywood Lane, Suite 400
Greenbelt, Maryland  20770
(301) 344-4032

*Counsel for Appellee*

I further certify that on this 29th day of December, 2009, I caused the required number of bound copies of this Brief of Appellant and Joint Appendix to be hand filed with the Clerk of this Court and for one copy of the Joint Appendix to be served, via UPS Ground Transportation, to all case participants, at the above listed address.

/s/ Nardine M. Guirguis
*Counsel for Appellant*